May it please the Court, my name is Audra Benet. I am representing the petitioners Francisco Lamadrid-Pacheco and Maria Reyes-Rutado. May I reserve two minutes of my time for rebuttal? Yes, please. Thank you. Please be reminded that the time you have shown on the clock is your total time. I understand. Thank you. Okay. Mr. Lamadrid and Ms. Reyes are husband and wife. They have seven United States citizen children. They had four children at the time of the proceedings, but subsequently had triplets. Petitioners did not have an attorney and represented themselves in front of the immigration judge and BIA. Petitioners withdrew their applications for asylum, and the immigration judge asked questions about their residency in the United States to determine their eligibility for cancellation of removal. The judge directed petitioners to file cancellation of removal applications. The immigration judge subsequently denied petitioners' applications for cancellation. After the judge issued his decision on the cancellation applications, the judge asked the petitioners if they had any questions. Mr. Lamadrid asked about his employment petition. Mr. Lamadrid explained that an employment petition was filed on his behalf as a mortician, the Department of Labor had approved the labor certification application, and that the immigrant visa I-140 petition was pending with the Immigration Service. Mr. Lamadrid stated that he had been following up with the petition with the Immigration Service and was told that it was pending and to wait. The government attorney asked Mr. Lamadrid was he working for the petitioning employer, and Mr. Lamadrid stated that he was not. Mr. Lamadrid was self-employed as an independent contractor in real estate. The immigration judge then told Mr. Lamadrid that the immigrant visa petition was invalid because he was required to be working for the employer while the petition was pending. The government attorney agreed with the immigration judge that the petition was invalid and that they were ineligible for adjustment of status. Petitioners were taken into custody by ICE in 2008. Petitioners retained counsel to file a stay of removal because they had seven U.S. citizen children and the triplets had medical issues. And that was the first time that petitioners had learned that they could have applied for adjustment of status. And they filed a motion to reopen requesting equitable tolling as they had relied upon the erroneous information given to them by the immigration judge and government attorney. Let me ask you, because we have a little time, what should the judge advise your client? The judge should, at the outset, in ascertaining what relief is available, the judge should have asked one simple question. Has anyone ever filed a petition on your behalf? All right, and the answer, he would have said yes, and then what? He would have said yes, and that would have opened the entire discussion. Which would have led to what? Would have led... Would he have qualified? Yes, he would have qualified, Your Honor. But the immigration judge told him he did not qualify. How would he have qualified? Well, they said he didn't qualify because he wasn't working at the time. But it is a prospective petition. All I-140 petitions are prospective. Go ahead. But doesn't it have to be tied to the employment that was the subject of the original work authorization? Your Honor, I-140 petitions are prospective petitions, as described in section 208.5 of the ACIP. But would you answer my question? Doesn't the petition have to be linked to the work authorization that's been granted? There is no work authorization granted during the I-140 petition process. The work authorization comes at the final third stage of the process, which is adjustment of status. Most I-140 petitions at this time were under 245I. Okay. So what's the point of the application then? Isn't it seeking adjustment? Exactly. Once the I-140 petition is approved and there's an immigrant visa available, then they can move to the third and final stage, which is adjustment of status. And that's the stage in which they get employment authorization and have to begin their employment. Maybe I'm misunderstanding the facts of this case, but I thought there was a work authorization for one type of work, and he was engaged in a different type of work. Am I confusing this case with a different case? Mortician. Right. Versus real estate. Right. Right. He didn't have work authorization at the time, so he was working self-employed in real estate because he didn't need work authorization. He was an independent contractor. But there's nothing in the record to show that he ever could prospectively have engaged in mortician work. That's my point, Your Honor. The judge never asked the question. They never even got to that point. But the only obligation of the immigration judge is to advise of the availability, not to determine eligibility at that point, but just to advise the petitioner of the prospective relief that might be available. And why do you think that wasn't done in this case? It was brought up at the end after the judge issued the decision on the cancellation of removal. And Mr. Lavender said, well, what about my employment petition? And the judge asked, were you working for him? And he said, no. And that was the end of it. The judge said, well, it's invalid. You're not eligible for adjustment of status. But it was on the table. So that's all the judge has to do is to let the applicant know of prospective relief that might be out there. And it's up to the applicant to follow up if indeed there is a valid basis for pursuing that relief. So to me I'm puzzled as to how on the one hand we can say that it was discussed, and on the other hand say that it wasn't brought to his attention. It was discussed at the conclusion of proceedings in which the immigration judge told him he was no longer, he was not eligible, that the I-140 petition was invalid, he was ineligible for adjustment of status. That concluded the proceedings. It was not, he didn't ask the relevant questions. He didn't ask, do you intend to work for the employer? But what case says that the IJ has to go that far and delve to that degree into prospective relief? The only obligation is to inform the petitioner that these potential avenues of relief are available for you, and it appears on the record that that was done. Your Honor, I believe the court did indent versus holder, and they said that if there's a pro se alien, then it is critical that the immigration judge scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. I don't believe that asking at the end of the proceedings and telling him, oh, you don't work for him, that's the end of it. It's not exactly what he said. Didn't he say you should look into the I-140? Because what he brought, your client brought it up almost as an afterthought. Right. At the end of the proceedings, that's correct. The judge said look into that, that may be something you should delve into. And that was a 1990 application, was it not? It was, Your Honor. And we're talking about 14 or 15 years later. Yes, Your Honor. All right. And then after that hearing in 2005, he waited another three years and three months. That's correct, Your Honor. Before doing anything, even though the judge said you ought to look into the I-140, correct? No, the judge told him that he was ineligible for the I-140. The I-140 was invalid. He didn't tell him to look into it. He asked questions. He said are you working there? And both the immigration judge and the government attorney concurred that the I-140 was invalid and they were not eligible for adjustment of status. So he took them at their word. The last appellate counsel, let's see if my recollection is correct on that one. You're asking for equitable tolling, right, because you had 90 days to file something to appeal, correct? Yes, Your Honor. And that requires due diligence on the part of the applicant, correct? Yes, Your Honor. Where's the due diligence here? Your Honor, this court in Socop said that it could equitably toll if the alien was provided incorrect information, in this case from the immigration judge. In Socop it was from an immigration officer. But they relied upon the immigration judge and the government attorney both saying this is an invalid petition. You're not eligible for adjustment of status. This is a pro se alien. Was that due diligence to just rely on what the immigration judge said off the cuff without knowing any of the particulars just based on what the petitioner said? Do you think it was due diligence for the petitioner to just drop the whole matter? For a pro se alien, I do. It's an intimidating environment. They don't know the immigration law. If the judge and the government attorney is both telling them this petition is not valid, you cannot file adjustment of status, that's authority to them. All right. You're down to one minute and 17 seconds. You want to save it for rebuttal? Yes, Your Honor. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Your Honor, I would like to ask a question on behalf of Judge Gould. You did your cone on behalf of the respondent, Attorney General. I think my time would be best used to briefly discuss the employment-based adjustment of status process with you so that we can clarify why the immigration judge was correct in advising the petitioner in this case. Before you get into it, could you tell me if I'm right in thinking that to adjust status, that the then INS would have had to adjust the petitioner's status? To have approved that employment application. That's correct. It's a three-step process with certain exceptions not applicable here. First, the aliens' employer files a labor certification application with the Department of Labor, which was done here. The Department of Labor certifies that application if it's established that there aren't United States workers who are able, willing, and qualified to engage in that work. Then the labor certification becomes valid for 180 days, and within that period, the employer files the form I-147. The employer then submits the application to the Department of Labor, which is then subject to the I-140 petition for alien worker. The same was done in this case, although we don't know the result. The employer must provide evidence showing that at the time the labor certification was filed, the employer had the ability to pay the offered wage and the alien possessed the required skills. An approved I-140 then places the alien in the line for a visa which may or may not be immediately available. The alien may need to wait a period of time until the visa is available for his or her preference category. Once the visa is immediately available, then it's the alien who files the form I-485, application to adjust status. At the time of adjustment, the alien must show the continued existence of an offer for employment as set forth in the labor certification in the I-140. Counsel, may I ask you, if the alien changes employment during that period, does that nullify the process? That was exactly the issue in this case. Right. As indicated in Respondent's brief, after 2000, there is some limited portability to an I-140, but it's only available to an individual who remains within the profession and who filed an I-485 application which has been pending for a certain amount of time. In this case, there was no indication that Mr. LeMadrid had filed the application I-485 to adjust status. And as such, his I-140, even if approved, and we don't even know if it was approved because there was the illegible notice in the record, would have been portable. Whose burden is that, by the way? I'm sorry? Whose burden is that? The burden is on the alien to demonstrate eligibility for relief from removal. But in this case, it was an eligible, I mean, an illegible form. Yes. Whatever happened with that? As explained by the judge, it doesn't matter whether it was legible or not because the I-140 was no longer relevant to this applicant. If he was not in the profession of mortician any longer. And the record indicates that he was working for the individual who petitioned for him, McCormick and Son, from the years of 1989 to 1999. But by the time he appeared in immigration court, he was no longer working as a mortician. So the immigration judge correctly advised him that he was no longer eligible to adjust status based on that I-140. However, as Petitioner indicated, there is this section 245i, which may have grandfathered him in because of the approved labor certification, meaning that notwithstanding the fact that he entered the United States without being admitted or paroled after inspection, he may still be eligible to adjust status. But that doesn't mean that he is not required to present a valid immigrant visa. And again, the immigrant visa which may have been available to him as a mortician was no longer relevant to his case. So the immigration judge correctly stated it on the record. Well, you can have your child petition for you once a child turns 21. Your wife's sister could petition for you after she becomes a citizen, so on and so forth, indicating several avenues for relief that may become available, but that were not ripe at the time. But what's your response to opposing counsel's argument that the immigration judge should have probed further into the circumstances to determine whether or not there was a way that the Petitioner could have adjusted status? The immigration judge and the government attorney did ask Petitioner whether he was employed and whether the employer had filed a visa petition on his behalf. And he said no. And at that time, he didn't indicate that any other petition had ever been filed on his behalf. And so there appears to have been some inquiry off the record with the government attorney about employment and so on. We're not privy to that because it was off the record. But there was some discussion about employment and whether a visa had ever been filed on his behalf. And the immigration judge did correctly indicate if you have additional evidence which might support your case for adjustment, you may file a motion to reopen and or you can take this on appeal to the board. But at this moment in time, with the evidence before us, you're simply not eligible for adjustment of status. Now, Your Honors, it's important to note as well that Petitioners accepted voluntary departure, which is an agreed-upon exchange of benefits between the government and the alien. And because Petitioners failed to depart as ordered in the immigration judge and the board's decision, they did become ineligible for relief, including adjustment of status for a period of 10 years. And so adjustment of status would be difficult for these individuals for various reasons. But the underlying point in this case is that the agency and the board in this case in particular did not abuse its discretion in denying the motion to reopen because it's unquestioned that the motion to reopen was untimely when filed three years after the board dismissed appeal from the denial of cancellation. And Petitioners challenged to the denial of equitable tolling is without merit because the immigration judge correctly advised the Petitioner about their eligibility for relief from removal. So if Your Honors don't have any further questions, we would just ask. Counsel, I have one question. Sure. It's a little bit off the beaten track of the technical legal issues. But my question is, you know, where does this case fit within the range of cases discussed in some of the government's current memos about when they exercise discretion not to remove someone? And is this case suitable for mediation? And the reason I'm asking is because, you know, we're looking at an alien, undocumented alien who has a lot of U.S. citizen children. He's got work. He's not on the dole. And as far as I know, he's got no significant criminal record. So, you know, what's the point of kicking him out of here? And would there be any benefit to mediating? I certainly do understand the Court's concern. It appears as though Petitioner wasn't interested in prosecutorial discretion, presumably because Petitioners thought they had something better in the Court of Appeals, adjustment of status. However, if Petitioners or the Court were inclined to request or to place this case in mediation, the government wouldn't be opposed. Okay. Thank you. Sure. Thank you, Counsel.  Thank you very much, Your Honor. Just to answer Judge Gould's question, prosecutorial discretion didn't exist back at this time. Prosecutorial discretion only came about a few years ago. And Petitioners would definitely be interested in some sort of mediation in this matter. But I just wanted to touch really quickly on the portability issue, because I don't believe portability is an issue here. Mr. Lamadrid did not wish to port his petition to a new employer. Mr. Lamadrid intended to work for the petitioning employer as a mortician. Where is that in the record? Well, it was never asked. That's what I was going to get to. It was never asked. That was the question the judge never asked. The judge said, are you working for that employer now? The answer was no. That's the answer. Your Honor, the inquiry is, do you intend to work? And that's what all the case law says. It says, do they intend to work when they get to the adjustment of status phase? Do they intend to work? He's been working 9 years, 10 years. Now all of a sudden he's going to change to mortician and he's not going to mention that? He never had the opportunity, Your Honor. That's the point. If the judge had just asked the questions, if this had come up at the beginning instead of the very end when it was dismissed because the judge had already issued his decision, there would have been an opportunity to discuss this and the government attorney to research it, the judge to research it. I'll repeat my earlier question. Where's the due diligence? He brings it up. It's very important to your client, correct? Yes, it is, Your Honor. Go check into it and he sits on it for 3 years and 3 months. Right. And to follow up on Judge Gold's comment, he's not only not on the dole, according to the record, he's got a net worth of about $1 million. He certainly has assets to get a lawyer as he apparently eventually did. And to follow up again on Judge Gold's comments, maybe a good subject for remediation because he is the kind of person I think discretion might be exercised in his favor given what he's done since he's been here. And I agree, Your Honor. I just believe that because he was a pro se alien, he relied, solely relied on the advice of the immigration judge and the government attorney, believing that to be the law. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. And the panel will confer and decide whether or not to enter an order for mediation. But we thank both parties for your willingness to submit to mediation.
judges: Huck, Gould, Rawlinson